IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

KATHRYN TOMKINS                                                           PLAINTIFF

v.                               Civil No. 04-6117

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Kathryn Tomkins (hereinafter "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her applications for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits pursuant to *§ 1602* of Title XVI, *42 U.S.C. § 1381a*.

Plaintiff was 28 years of age at the time of the March 21, 2001 administrative hearing and had a high school education, as well as 3 semesters of college (T. 29, 107, 116). She last worked at the front desk of a Clarion hotel (T. 30, 31, 40, 98-103, 123-129).

Plaintiff alleges an inability to work due to: history of juvenile rheumatoid arthritis; polyarthralgias; fibromyalgias; myalgias; gastric ulcers; pain in all of her joints; a bulging lumbar disc; a bulging cervical disc; anxiety; swelling; depression; mitral valve prolapse; chronic fatigue, exhaustion and weakness; migraine headaches; and, numbness. She protectively filed her application for benefits on November 4, 1999, alleging an onset of disability from May 15, 1996 (T. 82-84). Additionally, Plaintiff protectively filed her application for SSI benefits on September 27, 1999 (T. 288-293).

The Social Security Administration denied plaintiff's current application initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on March 21, 2001 before ALJ Henry Ginger in Hot Springs, Arkansas (T. 26-58). The ALJ rendered a decision adverse to Plaintiff on July 12, 2001 (T. 15-19).

The Plaintiff then petitioned the Appeals Council for review on July 16, 2001 (T. 11). On May 1, 2003, counsel for Plaintiff again wrote to the Appeals Counsel requesting action on Plaintiff's July 16, 2001, request for review (T. 9). The Appeals Council denied review on August 19, 2004 (T. 6-8), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that unfavorable decision (Doc. # 1, 4). This matter is before the undersigned by consent of the parties (Doc. # 3).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)*. Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000)*. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.*, or because we would have decided the case differently. See *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)*.

AO72A
(Rev. 8/82)

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*.

AO72A
(Rev. 8/82)

Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. Such documentation, as referred to within the regulations, is referred to as the PRT factors, mentioned previously.

**Discussion:**

The ALJ evaluated the plaintiff's claim according to the five-step sequential evaluation analysis prescribed by the social security regulations. See *20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987)* (describing five-step analysis). At the first step, the ALJ found the plaintiff had not engaged in substantial gainful activity since her alleged onset date (T. 16). At the second step, the ALJ determined that the plaintiff had no severe, medically determinable impairments, and no impairment or impairments that significantly limited her ability to perform basic work-related activities (T. 17, 19). See *20 C.F.R. § 404.1521; Bowen v. Yuckert, supra*.

Plaintiff makes several arguments[1], however, the primary question before the undersigned is whether the ALJ erred in determining that Plaintiff did not have a severe, medically determinable impairment. In addition to this issue, it is noted that Plaintiff argues that the ALJ: rendered a decision not supported by substantial evidence; erred in finding Plaintiff's allegations not fully credible; and, erred in finding Plaintiff could perform work in the national economy (Doc. #4, p. 2). The sequential evaluation process may only be terminated, as herein, at step two, when the impairment or combination of impairments would have no more than a minimal effect on the plaintiff's ability to work. *Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir.1996),* citing *Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir.1991)*

---

[1] See Doc. #4, pp 2-6.

AO72A
(Rev. 8/82)

The procedure of terminating the process at step two has been upheld by the United States Supreme Court in *Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)*. In *Brown v. Bowen, 827 F.2d 311 (8th Cir.1987)*, the United States Court of Appeals for the Eighth Circuit discussed the impact of *Yuckert* and noted:

> On June 8, 1987, the Supreme Court held that the second step of the sequential evaluation process was not per se invalid. See *Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)*. In regard to the application of that standard, however, a majority of the Court adopted a standard which provides that '[o]nly those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process. *Id. 482 U.S. at 158, 107 S.Ct. at 2299.*

*Brown v. Bowen, 827 F.2d at 312.*

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record. *Johnston v. Apfel, 210 F.3d 870, 875 (8th Cir. 2000)*; see also *Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000)* (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). Thus, the plaintiff did have the burden of showing a severe impairment that significantly limited her physical or mental ability to perform basic work activities, but the burden of a plaintiff at this stage of the analysis is not great. *Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)*.

Further, to establish entitlement to benefits, the plaintiff must show that she had been unable to engage in any substantial gainful activity by reason of a medically determinable impairment which had lasted or could have been expected to last for not less than 12 months. See *42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A)*.

AO72A
(Rev. 8/82)

The administrative record herein discloses Plaintiff's longstanding and recurrent problems with pain (T. 34, 35, 38, 39, 41, 42, 43, 44, 49, 50, 51, 54, 55, 56, 105, 106, 107, 131, 133, 132, 134, 136, 144, 176, 191, 192), fatigue (T. 39, 41, 49, 50, 54, 56, 104, 106, 133, 134, 144, 193, 219), anxiety (T. 36, 37, 142, 143, 144, 145) and depression (T. 36, 37, 54, 88, 90, 103, 104, 142, 143, 144, 154, 164, 165, 166, 212). Plaintiff testified that she had experienced the fatigue and weakness for a long time. Indeed, she reported her fatigue and exhaustion to her treating physicians on a number of occasions. Likewise, Plaintiff sought counseling for her anxiety and depression. During the relevant time period, Plaintiff was prescribed numerous anti-depressant medications, including Zoloft, Effexor XR and Paxil (T. 114, 164, 142, 143, 90, 103, 164, 165, 167). Plaintiff was also prescribed Xanax in response to her complaints of anxiety (T. 36, 49, 142, 143).

Yet, despite the above record cites to Plaintiff's allegations of depression and anxiety, the ALJ fails to mention these alleged impairments when rendering his decision (T. 13-17). Neither does the ALJ cause Plaintiff to undergo an updated psychiatric consultative examination, nor does his decision include documentation of the PRT analysis, mentioned previously.

We question the adequacy of the ALJ's analysis of Plaintiff's mental impairments. No PRT analysis or documentation was included within or attached to the ALJ's decision. Under Social Security regulations, completion of such analysis, and documentation thereof, is required when evidence of a medically determinable mental impairment has been presented. See *Pratt v. Sullivan, 956 F.2d 830, 834 (8th Cir.1992).*

Likewise, the undersigned questions the adequacy of the ALJ's assessment of Plaintiff's

AO72A
(Rev. 8/82)

alleged physical impairments. The ALJ only finds that Plaintiff suffers from one impairment, degenerative disc disease (T. 17). However, the ALJ finds that Plaintiff does not have a severe impairment (T. 17, 19). The ALJ makes this determination without conducting any analysis of Plaintiff's diagnosis of fibromyalgia.

Dr. Melody St. John, a rheumatologist, diagnosed Plaintiff with fibromyalgia. The term "myalgia" indicates muscular pain. Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Any of the fibromuscular tissues may be involved, but those of the occiput, low back, neck, shoulders, thorax, and thighs are especially affected. Fibromyalgia occurs mainly in women. This condition may be induced or exacerbated by physical or mental stress, poor sleep trauma, exposure to dampness or cold, and occasional by a systemic, usually rheumatic disorder. A viral or other systemic infection may precipitate the syndrome in a person who may be otherwise predisposed. Diagnosis is recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. In localized forms, symptoms are more often sudden and acute. The pain is aggravated by straining or overuse. Tenderness, tightness and/or muscle spasms may occur. The onset of pain and stiffness can be gradual, diffuse and achy. However, in localized forms, symptoms are more often sudden and acute. In milder cases, fibromyalgia can remit spontaneously with decreased stress. Yet, the condition may become chronic or recur at frequent intervals. See *The Merck Manual,* pp. 1369-1371 (16th Edition, 1992).

AO72A
(Rev. 8/82)

Fibromyalgia[2] is a group of common nonarticular disorders characterized by achy pain, tenderness, and stiffness of muscles, areas of tendon insertions, and adjacent soft tissue structures. See *The Merck Manual, p. 481-482 (17th Ed. 1999)*. Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient who really has fibromyalgia to flinch. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not. *Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology), 310 British Med.J. 386 (1995)*. The question is whether the plaintiff is one of the minority, or not.

Here, Dr. St. John determined Plaintiff suffered from 12 out of 18 fibromyalgic tender points on August 1, 2000 (T. 206-207), and December 21, 1999 (T. 211-212). Dr. St. John also found Plaintiff had 18 out of 18 fibromyalgic tender points on January 5, 2000 (T. 208-209). Despite these findings by Plaintiff's treating and examining rheumatologist, the ALJ failed to mention these findings or the significance thereof (T. 15-19).

After careful consideration of the administrative record, the undersigned finds that substantial evidence does not support the ALJ's termination of the sequential evaluation at step

---

[2] Fibromyalgia is also referred to as myofascial pain syndrome, fibrositis and fibromyositis. *The Merck Manual, p. 481 (17th Ed.1999)*.

two. Substantial evidence does not support a finding that Plaintiff's impairments had no more than a minimal impact on her ability to work. *Caviness v. Massanari, 250 F.3d at 605.*

Additionally, upon remand, the Court suggests that the Commissioner consider and analyze the issue of Plaintiff's alleged lack of financial means with which to obtain treatment (T. 51, 137, 263). Plaintiff alleges that she experiences a lack of money to the point that she is unable to obtain insurance or continue to see her rheumatologist, Dr. St. John. The record also reflects that Plaintiff was the recipient of Medicaid benefits during only a portion of the relevant time period (T. 137, 263). This issue may or may not impact upon the frequency of Plaintiff's medical treatment and/or use of prescription or over-the-counter medication. Upon remand, the issue should be addressed by the parties. Such analysis is essential when, as here, the ALJ relied upon a finding that Plaintiff's subjective complaints are not entirely credible when halting the sequential analysis at step two (T. 18).

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).*

## Conclusion:

Accordingly, we conclude that the decision of the ALJ herein, denying benefits to the Plaintiff, is not supported by substantial evidence of record, and should be reversed. This matter should be remanded to the Commissioner for reconsideration consistent with this opinion.

AO72A
(Rev. 8/82)

ENTERED this 7th day of September, 2005.

    /s/Bobby E. Shepherd
   Honorable Bobby E. Shepherd
   United States Magistrate Judge

AO72A
(Rev. 8/82)